IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>v.<br><br>DEON RAYMOND MARTINEZ,<br><br>     Defendant. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**<br><br>Case No. 1:16-CR-4-DN<br><br>District Judge David Nuffer |

   Defendant Deon Raymond Martinez moved to suppress all evidence seized on October 30, 2015, by the Arizona Department of Public Safety as a result of a traffic stop of a vehicle in which he was a passenger.[1] Defendant argues that officers lacked reasonable suspicion of criminal activity to stop the vehicle in violation of the Fourth Amendment of the United States Constitution.[2] An evidentiary hearing on Defendant's Motion to Suppress was held on November 21, 2016.[3] Defendant, Defendant's counsel, and counsel for the government were present.[4] Testimony and evidence were produced.[5] After careful review of the evidence presented, the applicable law, and the arguments and briefing of counsel in the form of draft orders, it is clear the officer's traffic stop of the vehicle was supported by a reasonable suspicion of criminal activity. Therefore, Defendant's Motion to Suppress[6] is DENIED.

---

[1] Motion to Suppress, docket no. 20, filed Oct. 19, 2016.

[2] *Id.*

[3] Motion to Suppress Hearing Transcript ("Transcript"), docket no. 27, filed Nov. 28, 2016.

[4] *Id.*

[5] *Id.*

[6] Docket no. 20, filed Oct. 19, 2016.

## Contents

FINDINGS OF FACT ................................................................................................................ 2
ANALYSIS ............................................................................................................................... 9
    Trooper Phillips had reasonable suspicion to stop the white Cadillac .................................. 11
    The Winslow robbery suspect and Flagstaff suspicious person descriptions matched .......... 12
    White Cadillacs are rarely seen on I-40 at mileposts 307-359 ................................................ 13
    The distances and timelines are consistent between the Winslow robbery, the suspicious
        activity in Flagstaff, and Trooper Phillips's observation of the White Cadillac ........ 14
    The driver of the white Cadillac appeared to match the bank robbery suspect ..................... 15
    Trooper Phillips has a particularized and objective basis for suspecting the white Cadillac
        may be involved in criminal activity ...................................................................... 16
ORDER .................................................................................................................................... 17

## FINDINGS OF FACT

Trooper Christian Phillips is a State Trooper assigned to the Arizona Highway Patrol Division under the Arizona Department of Public Safety ("Arizona DPS").[7] Trooper Phillips is POST certified[8] and has work for the Arizona DPS for two-and-a-half years.[9] He has additional DPS training in advanced criminal interdiction[10] including drug trafficking and money laundering.[11] Additionally, Trooper Phillips has six years' experience working as a Military Police soldier in the United States Army Reserve[12] including assignments working as a patrol supervisor and field trainer for younger soldiers[13] and one combat deployment to Afghanistan.[14]

On Friday, October 30, 2015, Trooper Phillips was working the day shift patrolling on Interstate 40 ("I-40") in the Sanders, Arizona, Unit from milepost 307 to 359.[15] This area is east

---

[7] Transcript at 6:5-6, 12-15, docket no. 27, filed Nov. 28, 2016.

[8] *Id*. at 7:17-20; 8:8-9.

[9] *Id*. at 6:19-20.

[10] *Id*. at 7:22-23.

[11] *Id*. at 8:5-7.

[12] *Id*. at 6:22-24.

[13] *Id*. at 7:13-14.

[14] *Id*. at 7:3-4.

[15] *Id*. at 8:14-25.

of Holbrook, Arizona, and continues all the way to the Arizona/New Mexico border.[16] His

assignment was general enforcement and he was in uniform and operating a fully marked police

car.[17] The police car's radio was set to monitor the Arizona DPS District 3, which covers

Winslow, Holbrook, Sanders, Springerville, Show Low, Heber, and a large section of the Navajo

reservation in Arizona.[18] The car also had a police scanner to monitor the Apache County

Sheriff's Office, Navajo Nation Police, and local fire and EMS.[19]

     October 30, 2015, was a clear, sunny day and the road was dry and free of major defect.[20]

The stretch of I-40 between Winslow and Sanders is a divided highway—two lanes traveling in

each direction, eastbound and westbound, divided by a positive median barrier.[21] The speed limit

in this area of I-40 is 75 miles per hour.[22]



Winslow, Arizona, is located at approximately I-40, mileposts 250-257, and is approximately

one hour west of Sanders, Arizona (I-40, milepost 340)[23] and approximately 25 miles west of

---

[16] *Id*. at 9:1.

[17] *Id*. at 9:6-15.

[18] *Id*. at 9:20-24.

[19] *Id*. at 9:24-10:1.

[20] *Id*. at 10:4-6, 12.

[21] *Id*. at 11:5-8.

[22] *Id*. at 11:11-12.

[23] *Id*. at 10:17-18, 24-25; Government's Exhibit 1, docket no. 25, filed Nov. 21, 2016.

Holbrook, Arizona (I-40, milepost 285).[24] Flagstaff, Arizona, is approximately one hour west of Winslow, Arizona, driving at the speed limit.[25] Winslow's population is approximately 9,000 to 10,000.[26]

At 11:41 a.m. Mountain Standard Time ("MST"), Trooper Phillips was notified, via police radio, that there had been a bank robbery in Winslow, Arizona.[27] Arizona observed MST on October 30, 2015.[28] The robbery call caught Trooper Phillips's attention because there are not many bank robberies in that part of Arizona.[29] Dispatch said that the Winslow Police Department was requesting the Arizona DPS's assistance with a possible subject—male, wearing a Bud Light hat—and another possible male subject running eastbound from the bank in the alley wearing a blue and white checkered shirt and blue jeans.[30] Additionally, Trooper Phillips received information that one of the suspects was described as a Native American male wearing glasses and a hat.[31] At the time of the dispatch call, Trooper Phillips was approximately one-hour east of Winslow, Arizona, patrolling I-40.[32]

At 12:13 p.m. MST, approximately 30 minutes after the first dispatched robbery call, Arizona DPS Gang Task Force Sgt. Brian Swanty, who was at the robbery scene, broadcasted a

---

[24] Government's Exhibit 1, docket no. 25, filed Nov. 21, 2016.

[25] Transcript at 38:4-7, 40:11-12, docket no. 27, filed Nov. 28, 2016.

[26] *Id*. at 10:20-21.

[27] *Id*. at 13:4-10, 39:15-20. Troop Phillips testified that he did not know when the Winslow Police Department was notified of the bank robbery, and that he had not seen the Winslow Police Department's report, but he acknowledged that there is a time lapse between a robbery happening and an all-points bulletin to law enforcement. *Id*. at 39:15-40:5.

[28] *Id*. at 12:21-23.

[29] *Id*. at 13:12-13.

[30] *Id*. at 13:16-21; 31:20-24.

[31] *Id*. at 15:1-3, 31:25-32:6. Trooper Phillips testified that he could not recall whether the information that one of the suspects was wearing glasses came from the 11:41 dispatch report or later from the 12:13 dispatch report. *Id*. at 15:3-10.

[32] *Id*. at 14:5-13.

single update on potential suspects.[33] Sgt. Swanty reported that at 11:00 a.m. MST a white

Cadillac was seen leaving Flagstaff eastbound with a Native American male in a light blue

checkered hoodie and a Bud Light ball cap.[34] The white Cadillac had been reported as suspicious

in Flagstaff when it was near a Wells Fargo Bank at around 11:00 a.m. MST, but no robbery had

occurred.[35] At no time was it reported to Trooper Phillips that a white Cadillac was involved in

the Winslow robbery.[36]

      The description of the individuals involved in the suspicious activity near the Flagstaff

Wells Fargo, who left traveling eastbound in a white Cadillac, and the suspect in the Winslow

Wells Fargo robbery were similar: Native American male with a blue checkered hoodie and Bud

Light hat.[37]

      At the time of Sgt. Swanty's broadcast, Trooper Phillips was located at I-40, milepost

330.[38] Upon hearing Sgt. Swanty's call, Trooper Phillips began traveling westbound on I-40

towards the Navajo/Apache County line at milepost 307 looking for a white Cadillac.[39] Trooper

Phillips knew that there was a Wells Fargo Bank in Holbrook, Arizona, and he was trying to

make his way closer to Holbrook in case that bank was a possible target.[40]

      Prior to this incident, Trooper Phillips had monitored "a lot" of traffic in the area he

patrolled on I-40.[41] Trooper Phillips described that the majority of vehicles that typically travel

---

[33] *Id*. at 14:14-19.

[34] *Id*. at 14:19-22; 31:20-32:2, 37:25-38:3. Trooper Phillips testified that there is a potential for delay between the time of this incident and when the report was broadcasted. *Id*. at 42:4-11.

[35] *Id*. at 33:6-13, 39:4-8.

[36] *Id*. at 32:22-33:3, 33:18-20.

[37] *Id*. at 38:13-16.

[38] *Id*. at 15:11-14.

[39] *Id*. at 15:17-18, 17:11-13.

[40] *Id*. at 15:18-21.

[41] *Id*. at 16:5-8.

on I-40 are Jeep Patriots, Dodge Avengers, Pontiac G series sedans, half-ton pickups and rental cars.[42] Any high-end and high value cars on this highway tended to be Challengers, Charger SRTs, Corvettes, Stingrays, and Teslas.[43] White Cadillac sedans were not a common car for that area.[44]

As Trooper Phillips was traveling westbound on I-40, milepost 319, he saw a white Cadillac sedan on the other side of the highway traveling eastbound on I-40.[45] The white Cadillac was traveling within the speed limit at approximately 75 mph.[46] The white Cadillac stood out and grabbed Trooper Phillips' attention.[47] Trooper Phillips traveled to the next crossover (an area on the freeway that allows emergency vehicles to cross the median),[48] went across the median, and began to travel eastbound on I-40 in the number 1 lane (fast lane) to catch up to the Cadillac.[49] It took Trooper Phillips less than two minutes to catch up to the white Cadillac which was traveling in the number 2 lane (slow lane).[50] Trooper Phillips was traveling fast to catch up to the Cadillac, but did not have his emergency lights or siren activated.[51] At 12:25 p.m. MST, while pursuing the Cadillac, Trooper Phillips asked dispatch to run the

---

[42] *Id.* at 16:14-20.

[43] *Id.* at 16:23-25.

[44] *Id.* at 17:11.

[45] *Id.* at 17:5-7.

[46] *Id.* at 31:1-3, 34:8-10, 39:12-14.

[47] *Id.* at 17:12-13; Government's Exhibit 2, docket no. 25, filed Nov. 21, 2016. The plastic seen in Government's Exhibit 2 on the driver's window was not present when Trooper Phillips observed the vehicle traveling on I-40. The window was later rolled down and would not roll up thereafter. The plastic was placed over the window to prevent any tempering which the vehicle was in evidence. *Id.*; Transcript at 18:13-19:1, docket no. 27, filed Nov. 28, 2016.

[48] Transcript at 19:15-25, docket no. 27, filed Nov. 28, 2016.

[49] *Id.* at 20:2-10.

[50] *Id.*

[51] *Id.* at 21:1-4.

Cadillac's license plate (New Mexico 678SRT).[52] Upon reaching the Cadillac, Trooper Phillips

pulled alongside the driver's side of the car to try to look inside.[53] Trooper Phillips observed that

the back window and driver's side window and back passenger window were excessively tinted,

to the point he could not see into the vehicle, but within Arizona law.[54] However, while trying to

look through the Cadillac's tinted windows, Trooper Phillips observed the outline of the driver,

and that the driver appeared to be a Native American male[55] wearing glasses.[56] The driver was

not wearing a Bud Light hat.[57] Trooper Phillips believed that he had found the car that Winslow

police were looking for.[58] At 12:27 p.m. MST, Trooper Phillips backed off from alongside the

Cadillac and pulled behind it to follow, without activated emergency lights or siren, and called

for backup.[59]

  At I-40, milepost 325, there is a highway exit for the Navajo Travel Center.[60] Upon

approaching milepost 325, the Cadillac activated its right turn signal indicating its intent to exit

the freeway.[61] Although dispatch had not returned license information on the white Cadillac,

Trooper Phillips knew that there were many smaller dirt roads and smaller communities in the

---

[52] *Id*. at 20:12-15.

[53] *Id*. at 20:20-21.

[54] *Id*. at 20:21-24, 34:22-24.

[55] Trooper Phillip's original police report stated that he "pulled alongside the vehicle and observed a Native American female driver wearing glasses." *Id*. at 29:22-24. Trooper Phillips testified that he wrote "female" in his report because the driver was, in fact, a female. *Id*. at 29:24-25. However, Trooper Phillips testified that at the time he made his initial observation, he "did believe that driver to be a male subject." *Id*. at 30:1.

[56] *Id*. at 21:12-16, 22:24-23:6.

[57] *Id*. at 35:16-17.

[58] *Id*. at 21:19-20.

[59] *Id*. at 21:20-25.

[60] *Id*. at 22:4.

[61] *Id*. at 22:5-6.

area.[62] Additionally, Trooper Phillips was concerned that the vehicle's occupant(s) may have been involved in a bank robbery and he did not want the vehicle to go anywhere near innocent bystanders should it turn out to be a violent or out-of-the-normal range traffic stop.[63] Therefore, as the Cadillac exited the highway, Trooper Phillips activated his emergency lights and siren to conduct an investigatory traffic stop prior to getting the license plate information.[64]

The Cadillac proceeded to stop in a small dirt lot near the Navajo Travel Center property.[65] Trooper Phillips parked approximately 25 feet away and off center to the left behind the Cadillac.[66] Trooper Phillips got out of his car and made a wide approach, walking out and around the left side of the car giving space and distance between the car and himself, towards the Cadillac because his backup was minutes away.[67] The wide approach was for Trooper Phillips's safety since there was a suspicion that the Cadillac was just involved in a bank robbery, there may have been weapons in the car, and the wide approach gave Trooper Phillips space and time to react in case a threat presented itself.[68]

Trooper Phillips asked the driver to exit the vehicle.[69] As the driver's door opened, Trooper Phillips, based upon his drug interdiction and training, smelled an overpowering odor of fresh marijuana.[70] Trooper Phillips was taken back when he observed that a female, later

---

[62] *Id*. at 22:6-8.

[63] *Id*. at 34:3-7, 37:18-24.

[64] *Id*. at 22:3-10, 37:22-24.

[65] *Id*. at 22:17-23.

[66] *Id*. at 23:9-15.

[67] *Id*. at 24:7-13.

[68] *Id*. at 24:13-16.

[69] *Id*. at 24:18-20.

[70] *Id*. at 24:20-25:2, 36:1-3.

identified as Geri Allen, exited the car.[71] Trooper Phillips immediately detained her for

investigation of possession of marijuana.[72] As the female exited the vehicle, Trooper Phillips

saw legs in the front passenger's seat and told the occupant to "sit up" and "put your hands on

the dash."[73] The male passenger, later identified as Defendant Deon Raymond Martinez,

complied with Trooper Phillip's commands and was also detained for investigation of possession

of marijuana.[74]

Trooper Phillips based his reasons for stopping the white Cadillac on the following: The

timeline for the vehicle's travel from Winslow to I-40, mileposts 319-320 fit;[75] a white Cadillac

is not a common vehicle to see on I-40 in that particular area;[76] and the driver of the Cadillac

appeared to match the robbery suspect, to wit: Native American male wearing glasses.[77]

## ANALYSIS

"[S]topping an automobile and detaining its occupants constitutes a 'seizure' within the

meaning of [the Fourth Amendment], even though the purpose of the stop is limited and the

resulting detention quite brief."[78] Under *Terry v. Ohio*,[79] "certain seizures are justifiable under

the Fourth Amendment if there is articulable suspicion that a person has committed or is about to

commit a crime."[80] "A routine traffic stop… is more analogous to an investigative detention than

---

[71] *Id*. at 25:3-6, 12-13; Government's Exhibit 3, docket no. 25, filed Nov. 21, 2016.

[72] Transcript at 25:6-7, docket no. 27, filed Nov. 28, 2016.

[73] *Id*. at 25:8-11.

[74] *Id*.; Government's Exhibit 4, docket no. 25, filed Nov. 21, 2016.

[75] Transcript at 27:11-12, docket no. 27, filed Nov. 28, 2016.

[76] *Id*. at 27:13-14.

[77] *Id*. at 27:14-18.

[78] *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).

[79] 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

[80] *Florida v. Royer*, 460 U.S. 491, 498, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

a custodial arrest."[81] When analyzing a traffic stop under *Terry*, a court should ask two questions: (1) Was the officer's stop justified at its inception? And (2) was it reasonably related in scope to the circumstances that justified the interference in the first place?[82]

To justify a traffic stop at its inception, an officer must have reasonable suspicion of criminal activity – "a 'particularized and objective' basis for thinking unlawful activity is afoot."[83] "The Fourth Amendment requires some minimal level of objective justification for making the stop."[84] "That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence."[85] But it requires "something more than an inchoate and unparticularized suspicion or hunch[.]"[86] In evaluating the validity of a stop based on reasonable suspicion, the Supreme Court directs that we consider "the totality of the circumstances – the whole picture."[87] The Tenth Circuit has further elaborated on the reasonable suspicion standard:

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.[88]

---

[81] *United States v. Trestyn*, 646 F.3d 732, 742 (10th Cir. 2011).

[82] *Id.*

[83] *United States v. Esquivel-Rios*, 725 F.3d 1231, 1236 (10th Cir. 2013) (quoting *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).

[84] *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (internal quotations omitted).

[85] *Id.*

[86] *United States v. Chavez*, 660 F.3d 1215, 1221 (10th Cir. 2011) (internal quotations omitted).

[87] *Cortez*, 449 U.S. at 417.

[88] *United States v. Tuter*, 240 F.3d 1292, 1296 n.2 (10th Cir. 2001) (citing *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)).

And, "as long as [the officer] has a particularized and objective basis for suspecting an individual may be involved in criminal activity, [the officer] may initiate an investigatory detention even if it is more likely than not that the individual is *not* involved in any illegality."[89]

In assessing reasonable suspicion, courts give deference to trained law enforcement personnel and their "ability to distinguish between innocent and suspicious circumstances[.]"[90]

> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as fact-finders are permitted to do the same-and so are law enforcement officers….[T]he evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.[91]

"[O]fficers [may] draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person."[92] "The evaluation is made from the perspective of the reasonable *officer*, not the reasonable *person*."[93]

"The [g]overnment [bears] the burden before the district court of establishing by a preponderance of the evidence that reasonable suspicion supported the officer's stop of [a] vehicle."[94]

### Trooper Phillips had reasonable suspicion to stop the white Cadillac

Based on the totality of the circumstances, Trooper Phillips possessed reasonable suspicion, prior to initiating the traffic stop, that the occupant or occupants of the white Cadillac (license plate New Mexico 678SRT) were engaged in criminal activity.

---

[89] *United States v. Johnson*, 364 F.3d 1185, 1194 (10th Cir. 2004) (emphasis in original).

[90] *United States v. Mendez*, 118 F.3d 1426, 1431 (10th Cir. 1997).

[91] *Cortez*, 449 U.S. at 418.

[92] *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (internal quotations omitted).

[93] *United States v. Quintana-Garcia*, 343 F.3d 1266, 1270 (10th Cir. 2003) (emphasis in original).

[94] *United States v. Burciaga*, 687 F.3d 1229, 1230 (10th Cir. 2012).

**The Winslow robbery suspect and Flagstaff suspicious person descriptions matched**

The Tenth Circuit has held that suspects fleeing the scene of an armed robbery present exigent circumstances calling for action.[95] "The cases hold that a general description of either the getaway car or the suspects is a sufficient basis for the existence of probable cause."[96] While probable cause was not required to justify Trooper Phillips's stop of the white Cadillac, this precedent[97] demonstrates that a general suspect description in an armed robbery can provide sufficient reasonable suspicion to detain persons matching that general description.

The Winslow Wells Fargo Bank was robbed on October 30, 2015, just prior to 11:41 a.m. MST.[98] Dispatch described a possible robbery subject as a male, wearing a Bud Light hat, and another possible male subject running eastbound from the bank in the alley wearing a blue and white checkered shirt and blue jeans.[99] Additionally, one of the suspects was described as a Native American male wearing glasses and a hat.[100]

At 12:13 p.m. MST, about 30 minutes after the robbery dispatch call, Arizona DPS Sgt. Brian Swanty, who was on scene at the Winslow robbery, broadcasted a single update on potential suspects.[101] Sgt. Swanty reported that at 11:00 a.m. MST a white Cadillac was seen leaving Flagstaff eastbound with a Native American male in a light blue checkered hoodie and a

---

[95] *United States v. Miller*, 532 F.2d 1335, 1338 (10th Cir. 1976).

[96] *Id*.

[97] *Id*.

[98] Transcript at 23:4-10, docket no. 27, filed Nov. 28, 2016.

[99] *Id*. at 13:16-21. 31:20-24.

[100] *Id*. at 15:1-3; 31:25-32:2.

[101] *Id*. at 14:14-19.

Bud Light ball cap.[102] The white Cadillac had been reported as suspicious in Flagstaff when it was near a Wells Fargo Bank at around 11:00 a.m. MST, but no robbery had occurred.[103]

In both the Winslow and Flagstaff events, there is a description of a Native American male wearing a Bud Light hat and a blue and white, possibly checkered, shirt or hoodie.[104] The Winslow description adds that the robbery suspect is wearing blue jeans.[105] The Flagstaff description adds that the suspicious individual was seen leaving eastbound in a white Cadillac. And one of the reports adds the description that the suspect was wearing glasses.[106] Both events put their respective suspects near Wells Fargo Banks involved in a robbery or suspicious activity.[107] The similarities between the two reports create an objectively reasonable suspicion that the same person was involved in both the Flagstaff suspicious activity and the Winslow robbery.

**White Cadillacs are rarely seen on I-40 at mileposts 307-359**

Reasonable suspicion may exist based upon matches of unique automobiles with a driver fitting the general description of the bank robber.[108]

Trooper Phillips had considerable experience monitoring traffic on I-40 from mileposts 307-359.[109] Trooper Phillips described that the majority of vehicles that typically travel on I-40

---

[102] *Id*. at 14:19-22; 31:20-32:2, 37:25-38:3.

[103] *Id*. at 33:6-13, 39:4-8.

[104] *Id*. at 13:16-21, 14:19-22, 15:1-3, 31:20-32:2, 37:25-38:3.

[105] *Id*. at 13:16-21. 31:20-24.

[106] *Id*. at 15:1-3, 31:25-32:6. Trooper Phillips testified that he could not recall whether the information that one of the suspects was wearing glasses came from the 11:41 dispatch report or later from the 12:13 dispatch report. *Id*. at 15:3-10.

[107] *Id*. at 23:4-10, 33:6-13, 39:4-8.

[108] *United States v. Longmire*, 761 F.3d 411, 419-20 (7th Cir. 1985).

[109] Transcript at 16:5-8, docket no. 27, filed Nov. 28, 2016.

are Jeep Patriots, Dodge Avengers, Pontiac G series sedans, half-ton pickups and rental cars.[110] He also explained that any high-end and high value cars on I-40 tended to be Challengers, Charger SRTs, Corvettes, Stingrays, and Teslas.[111] White Cadillac sedans were not a common car for the area.[112] Therefore, the uniqueness of the white Cadillac to the area supports an objectively reasonable suspicion existed that the white Cadillac was the vehicle involved in the suspicious activity in Flagstaff.

**The distances and timelines are consistent between the Winslow robbery, the suspicious activity in Flagstaff, and Trooper Phillips's observation of the White Cadillac**

An accurate, albeit general, description of a vehicle, its occupants, and the arrival of a vehicle matching the description at a consistent time and distance from a robbery supports reasonable suspicion to conduct a traffic stop.[113]

The distance between Flagstaff, Arizona, and Winslow, Arizona, is approximately one hour traveling at the speed limit.[114] The suspicious activity near the Flagstaff Wells Fargo Bank occurred at approximately 11:00 a.m. MST.[115] The Winslow Wells Fargo Bank robbery occurred at some time just prior to 11:41 a.m. MST.[116] Therefore, it is objectively reasonable that, based on the distance and the timeline, the person involved in the Flagstaff suspicious activity could also be the Winslow Wells Fargo bank robber.

---

[110] *Id*. at 16:14-20.

[111] *Id*. at 16:23-25.

[112] *Id*. at 17:11.

[113] *United States v. Breedlove*, 444 F.2d 422, 424 (5th Cir. 1971).

[114] Transcript at 38:4-7, docket no. 27, filed Nov. 28, 2016.

[115] *Id*. at 14:14-22, 37:25-38:3, 39:4-8.

[116] *Id*. at 13:4-10.

Moreover, Winslow, Arizona, is approximately one hour west of Sanders, Arizona (I-40, milepost 340).[117] The Winslow Wells Fargo Bank robbery occurred at some time just prior to 11:41 a.m. MST.[118] At 12:13 p.m. MST, at the time of Sgt. Swanty's broadcast, Trooper Phillips was approximately located at milepost 330 on I-40, and began driving westbound on I-40.[119] Sometime between 12:13 p.m. MST and 12:25 p.m. MST, approximately 40 minutes after the robbery call, Trooper Phillips observed a white Cadillac traveling eastbound on I-40 at milepost 319, 21 miles west of Sanders, Arizona.[120] Therefore, it is objectively reasonable that, based on the distance and the timeline, the Winslow Wells Fargo bank robber could also be in the white Cadillac which Trooper Phillips saw at milepost 319 on I-40. Thus, the distances and the timelines between the Winslow robbery, the suspicious activity in Flagstaff, and Trooper Phillips's observation of the White Cadillac support an objectively reasonable suspicion that the white Cadillac was the vehicle involved in the suspicious activity reported to him.

**The driver of the white Cadillac appeared to match the bank robbery suspect**

Matching physical descriptions between suspect and person operating a vehicle supports reasonable suspicion to stop a vehicle.[121]

Although the white Cadillac's windows were heavily tinted,[122] Trooper Phillips' observed the outline of the driver, which appeared to be a Native American male wearing glasses.[123] This description was consistent with the descriptions of the Winslow robbery suspect

---

[117] *Id*. at 10:17-18, 24-25; Government's Exhibit 1, docket no. 25, filed Nov. 21, 2016.

[118] Transcript at 13:4-10, docket no. 27, filed Nov. 28, 2016.

[119] *Id*. at 14:14-19, 15:13-18.

[120] *Id*. at 17:2-7.

[121] *Longmire*, 761 F.3d at 419-20.

[122] Transcript at 20:21-24, 34:22-24, docket no. 27, filed Nov. 28, 2016.

[123] *Id*. at 21:12-16, 22:24-23:6, 29:22-24, 29:24-25, 30:1.

and the suspicious individual in Flagstaff.[124] The similarities between the suspect descriptions and Trooper Phillips's observations of the white Cadillac's driver support an objectively reasonable suspicion that the driver of the white Cadillac was involved in the suspicious activity in Flagstaff and the Winslow bank robbery.

**Trooper Phillips has a particularized and objective basis for suspecting the white Cadillac may be involved in criminal activity**

Considered in their totality, the above factors gave Trooper Phillips, in light of his training and experience, a particularized and objectively reasonable suspicion to believe that the occupants of the white Cadillac were engaged in criminal activity.

Trooper Phillips knew that the Winslow, Arizona, Wells Fargo Bank had been robbed at some time just prior to 11:41 a.m. MST. He knew that the suspects in the Winslow Wells Fargo Bank robbery were described as a male wearing a Bud Light hat and another possible male subject wearing a blue and white checkered shirt and blue jeans. Additionally, Trooper Phillips knew that one of the suspects was described as a Native American male wearing glasses and a hat. He also knew that at approximately 11:00 a.m. MST Flagstaff police had reported suspicious activity near a Wells Fargo Bank that involved a Native American male wearing a Bud Light ball cap and light blue checkered hoodie. Additionally, he knew that the suspicious person was seen leaving the Flagstaff area eastbound in a white Cadillac sedan. Trooper Phillips knew that it was uncommon for white Cadillacs to be seen traveling on I-40 between mileposts 307-359. And Trooper Phillips knew the distances and times of travel between Flagstaff, Arizona, and Winslow, Arizona, and between Winslow, Arizona, and his location on I-40. He knew that if the Winslow robber was traveling eastbound on I-40 in a white Cadillac, that the Cadillac would reach his location about the time that he saw the white Cadillac at I-40, milepost 319.

---

[124] *Id*. at 13:16-21, 14:19-22, 15:1-3, 31:20-32:2, 37:25-38:3.

Trooper Phillips drew common-sense conclusions; he was not required to ignore his observations under the circumstances. In fact, given the nature and severity of the crime and his personal observations of the white Cadillac at I-40, milepost 319, and of the white Cadillac's driver prior to initiating the traffic stop, Trooper Phillips had a duty to investigate promptly. Therefore, based upon Trooper Phillips's training, experience, and observations, he had a particularized and objective basis for suspecting that the Winslow bank robber may be traveling in the white Cadillac, and as such, he was justified in stopping the white Cadillac to initiate an investigatory detention to determine who was in the vehicle.

### ORDER

IT IS HEREBY ORDERED that Defendant's Motion to Suppress[125] is DENIED.

Signed January 23, 2017.

BY THE COURT

_____

District Judge David Nuffer

---

[125] Docket no. 20, filed Oct. 19, 2016.